UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CURTIS J. GRAHAM,

        Petitioner,

vs.                        Case No. 3:12-cv-1282-J-39MCR

SECRETARY, DOC, et al.,

        Respondents.

_____

**ORDER**

**I.  STATUS**

In his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1), Petitioner Curtis J. Graham challenges a 2007 (Duval County) conviction for trespass, burglary of an occupied dwelling, and burglary of a structure/conveyance.  He raises eight grounds of ineffective assistance of counsel.  In his first ground, he claims that he was deprived of his right to testify and his right to a speedy trial due to the ineffective assistance of counsel.  Petition at 8-9.  In the second ground, Petitioner complains that his counsel failed to adequately prepare for trial and to object to impermissible hearsay, unrelated collateral crime evidence, fingerprint evidence, and testimony concerning missing pocket change.  Id. at 11.  In ground three of the Petition, Petitioner asserts that his counsel was ineffective for depriving him of his right to testify.  Id. at 15.  In his fourth ground, Petitioner contends that counsel was

ineffective for failure to investigate the property at issue, thereby failing to discover that the garage could not be an occupied, attached dwelling. Petition at 18-19. In ground five, Petitioner alleges his counsel was ineffective for failure to object to testimony about uncharged collateral crimes, including testimony about his fleeing from the police and an alleged missing bicycle. Id. at 20-22. In his sixth ground, Petitioner claims his counsel provided ineffective assistance because she failed to object to impermissible hearsay testimony, allowing Petitioner's Confrontation Clause rights to be violated. Id. at 23-26. In ground seven, Petitioner asserts that he received the ineffective assistance of trial counsel because counsel failed to object to an in-court testimonial identification based on an illegal show-up identification. Id. at 27-31. In his final ground, Petitioner contends that his counsel was ineffective for failure to challenge a jury instruction on recently stolen property and the element of theft. Id. at 33-35.

In response, Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 12). Respondents do not calculate that the Petition is untimely filed, but they do contend that Petitioner is not entitled to habeas relief. Respondents submitted Exhibits (Doc. 12).[1]

---

[1] The Court hereinafter refers to the Exhibits as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page. Otherwise, the page

Petitioner's Reply (Doc. 13) followed.  <u>See</u> Order (Doc. 9).  The Court will address the eight grounds raised in the Petition.  <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992).  No evidentiary proceedings are required in this Court on these grounds.

## II.  STANDARD OF REVIEW

The Eleventh Circuit recently set forth the appropriate analysis when undertaking habeas review pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA):

> review of the state habeas court's decision is constrained by § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "imposes a highly deferential standard for evaluating state court rulings and demands that state-court decisions be given the benefit of the doubt." <u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253 (11th Cir. 2013), <u>cert</u>. <u>denied</u>, --- U.S. ----, 135 S.Ct. 67 (2014) (internal quotation omitted). Pursuant to the AEDPA, this Court is prohibited from granting relief if a state court has adjudicated a claim on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings," <u>id</u>. § 2254(d)(2).  This Court will analyze Petitioner's claims pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).

---

number on the particular document will be referenced.

French v. Warden, Wilcox State Prison, No. 12-15385, 2015 WL
3857639, at * 3 (11th Cir. June 23, 2015). See Harrington v.
Richter, 562 U.S. 86, 98 (2011) (setting forth the same three
exceptions to the bar to relitigation of any claim adjudicated on
the merits in state court).

In Stoddard v. Sec'y, Dep't of Corr., 600 F. App'x 696, 703
(11th Cir. 2015) (per curiam), petition for cert. docketed, (U.S.
June 12, 2015) (No. 14-10198), the Eleventh Circuit provides the
parameters for deferential review under AEDPA:

> A state-court decision represents an
> unreasonable application of clearly
> established federal law if the state court
> correctly identifies the governing legal rule
> from Supreme Court cases but unreasonably
> applies the established law to the facts of
> the case. Lockyer v. Andrade, 538 U.S. 63, 75,
> 123 S.Ct. 1166, 1174, 155 L.Ed.2d 144 (2003).
> The Supreme Court has repeatedly emphasized
> that "an unreasonable application of federal
> law is different from an incorrect application
> of federal law." Cullen v. Pinholster, ---
> U.S. ----, ----, 131 S.Ct. 1388, 1411, 179
> L.Ed.2d 557 (2011) (quotation marks omitted).
>
> A state court's determination of the
> facts is unreasonable only if no fairminded
> jurist could agree with the determination. Lee
> v. Comm'r, Ala. Dep't of Corr., 726 F.3d 1172,
> 1192 (11th Cir. 2013), cert. denied, --- U.S.
> ----, 134 S.Ct. 1542, 188 L.Ed.2d 557 (2014).
> Findings of fact by a state court are presumed
> to be correct, and a habeas petitioner must
> rebut that presumption by clear and convincing
> evidence. 28 U.S.C. § 2254(e)(1); Pope v.
> Sec'y for Dep't of Corr., 680 F.3d 1271, 1284
> (11th Cir. 2012). In determining how the state
> courts resolved a habeas petitioner's claims,
> we look to the last state court that rendered

a judgment in the case.  <u>Pope</u>, 680 F.3d at 1284-85.

In this opinion, the Court will give a presumption of correctness of the state courts' factual findings unless rebutted with clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and, the Court will apply this presumption to the factual determinations of both trial and appellate courts.  <u>See</u> <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003).

### III.  PROCEDURAL HISTORY

Initially, the Court will provide historical context to Petitioner's eight grounds for relief.  In misdemeanor Case No. 032695, Petitioner was charged with two misdemeanor offenses, loitering or prowling and resisting an officer without violence. Ex. L at 486-87, Exhibit E.  The state nol prossed count one, and Petitioner pled guilty to the second count.  <u>Id</u>. at 487. Petitioner was also charged with burglary of an occupied dwelling and burglary of a structure/conveyance in Case No. 15846.  <u>Id</u>. at 610, Exhibit H. Without proceeding to file an information, <u>id</u>. at 551-52, the state, on October 31, 2006, filed a "DN Disposition Notice" stating that it "declines to prosecute the defendant for these charges."  <u>Id</u>..

On November 7, 2006, Petitioner was charged by information with burglary of an occupied dwelling in Case No. 016155.  Ex. C at 5.  On February 26, 2007, he was charged by amended information with two counts of burglary of an occupied dwelling.  <u>Id</u>. at 15.

- 5 -

Finally, on March 1, 2007, Petitioner was charged with two counts of burglary of an occupied dwelling and one count of burglary of a structure/conveyance. Id. at 21. The state filed a Notice of Intent to Classify Defendant as a Prison Release Re-Offender. Id. at 96. In addition, the state filed a Notice of Intent to Classify Defendant as a Habitual Felony Offender. Id. at 97.

On March 6, 2007, Petitioner proceeded to a jury trial on all three counts of the second amended information. Ex. D. The jury returned a verdict of guilty as to a lesser included offense of trespass of an occupied structure on count one, burglary of an occupied dwelling on count two, and burglary of a structure/conveyance on count three. Id. at 242; Ex. C at 53-57.

Petitioner filed a Motion for New Trial on March 9, 2007. Ex. C at 58-59. The trial court denied the motion. Id. at 60; 182. The trial court adjudicated Petitioner guilty and sentenced him to one year in jail on count one, twenty years in prison as an habitual felony offender with an additional provision of a minimum mandatory term of fifteen years as a prison releasee reoffender on count two; and five years in prison on count three as a prison releasee reoffender, all sentences to run concurrently. Id. at 101-105; 187-190.

The First District Court of Appeal granted Petitioner a belated appeal. Id. at 155-56. Petitioner filed an appeal brief, Ex. F, the state answered, Ex. G, and Petitioner replied. Ex. H. On February 13, 2009, the First District Court of Appeal affirmed

- 6 -

per curiam with citation to one case.  Ex. I.  The mandate issued on March 24, 2009.  Ex. J.

Petitioner filed a Rule 3.850 Motion for Post Conviction Relief.  Ex. L at 1-52.  He sought to amend the motion.  Id. at 53-54.  On October 7, 2010, he filed an amended motion for post conviction relief (Amended Motion).  Id. at 55-119.  He also filed a Memorandum of Law and Exhibits.  Id. at 120-436.  The state responded (State's Response).  Id. at 437-63.  The state submitted an Appendix with its response.  Id. at 464-547.  On December 9, 2011, the trial court entered an Order Denying Defendant's Motion for Post Conviction Relief, adopting the reasoning set forth in the State's Response for many of the grounds and attaching relevant exhibits to the order.  Id. at 548-690.  Petitioner moved for rehearing, id. at 691-722, and the court denied rehearing.  Id. at 723-24.

Petitioner appealed.  Id. at 725.  On July 20, 2012, the First District Court of Appeal per curiam affirmed.  Ex. M.  Petitioner moved for reconsideration/rehearing.  Ex. N.  On September 20, 2012, the First District Court of Appeal denied the motion for reconsideration/rehearing.  Ex. O.  The mandate issued on October 9, 2012.  Ex. P.

On June 1, 2010, pursuant to the mailbox rule, Petitioner filed a Petition for Writ of Habeas Corpus alleging ineffective assistance of appellate counsel.  Ex. R.  On July 12, 2010, the

First District Court of Appeal denied the petition on its merits. Ex. S.

### IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

In the eight grounds presented in the pro se Petition, Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  Of note, some of the grounds raised in the Petition present overlapping claims.   In order to avoid repetition, the Court will address overlapping claims jointly.

To prevail on a Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  With respect to the two-pronged test, the Eleventh Circuit thoroughly explained what must be shown to meet both the deficient performance and prejudice prongs:

> Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 687-89, 104 S.Ct. at 2064-65. This requires a showing of "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quotation marks omitted). When a claim implicates both AEDPA and Strickland's highly

deferential standards, our review is "doubly" deferential. Id. at 105, 131 S.Ct. at 788.

In evaluating counsel's effectiveness, we are guided by several considerations: (1) a strong presumption exists that counsel's performance might be considered sound trial strategy; (2) strategic choices made after a thorough investigation are virtually unchallengeable, and (3) those strategic choices made after less than complete investigation are reasonable to the extent that reasonable professional judgments support the limitations on investigation. Strickland, 466 U.S. at 689-91, 104 S.Ct. at 2065-66. We must not only give counsel the benefit of the doubt, but must also "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as he did." Pinholster, 131 S.Ct. at 1407 (internal quotation marks omitted).

Prejudice is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The likelihood of a different result must be substantial, not just conceivable. Richter, 562 U.S. at 111-12, 131 S.Ct. at 792. The petitioner bears the burden of proof on both prongs of an ineffective-assistance claim. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001).

Stoddard, 600 F. App'x at 706-707.

Of import, before addressing the grounds raised in Petitioner's Amended Motion, the trial court set forth the Strickland standard which must be met to prevail on a claim of ineffective assistance of counsel. Ex. L at 549. The court noted that perfect or error-free counsel is not required. Id. Also, the court specifically adopted much of the reasoning set forth in the State's Response.

- 9 -

In ground one, Petitioner claims that he was deprived of a speedy trial due to the actions of his counsel.  Petition at 8-9. In both grounds one and three of the Petition, Petitioner claims he was deprived of his right to testify.  Id. at 8-9, 15.

In order to properly address the speedy trial issue, the Court will provide some background information.  On March 6, 2007, prior to the commencement of the trial, Kelly Papa, an Assistant Public Defender, announced to the court that two depositions had been scheduled, but only one witness appeared, Art Collier (one of the victims).  Ex. D at 7.  Ms. Papa advised the court that depositions were ordered but had no yet been provided to the defense.  Id.  She told the court that her client was concerned that she did not have the depositions to prepare for cross examination and trial.  Id. The court said: "Mr. Graham was concerned that we go ahead with this trial not withstanding he fact that you did not feel that you could fulfill your ultimate professional responsibilities by being fully prepared."  Id.  Petitioner stated that he would like to have the deposition transcript.  Id. at 8.  The court then told Petitioner that it would continue his case until some time in June. Id.  The court noted that during the previous week, the issue of the defense not being ready to go to trial was discussed, but Petitioner insisted that he wanted to go to trial, against the advice of his lawyer.  Id.  The court reminded Petitioner that his counsel was not fully prepared to go to trial, and the court would continue the trial, but Petitioner would have to waive speedy

trial.  Id.  Petitioner responded that he wanted to go ahead and have an immediate trial.  Id.  Petitioner said he wanted his trial that day.  Id. at 8-9.  The court asked Petitioner again about continuing the trial, reminding him that it was his decision, but he needed to make that decision with "full information."  Id. at 9.  Petitioner insisted that he wanted to go to trial and told the court that he had sufficient time to discuss the matter with his counsel.  Id.

The trial court rejected the ineffective assistance of counsel claim stating: "[i]n ground ten, Defendant's [sic] claims that, but for Counsel's failure to enforce his right to speedy trial, his speedy trial period would not have elapsed.  This Court denied Defendant's tenth ground under the reasoning set forth in the State's Response to ground ten.  (Exhibit I at 8-9)."  Ex. L at 555.  The state, referencing the trial transcript, noted that the record shows "the Defendant had actual notice of his speedy trial rights, yet contrary to the advice of his counsel, decided to move forward with the case, making his claim meritless."  Id. at 455.  The First District Court of Appeal affirmed the decision of the trial court.  Ex. M.

It is important to note that a defendant's request for a continuance waives his right to speedy trial.  Randall v. State, 938 So.2d 542, 544 (Fla. 1st DCA 2006) (per curiam).  The most serious form of prejudice is that pertaining to a defendant's ability to put on a defense.  Here, defense counsel wanted a delay

- 11 -

in order to properly prepare for trial.   In this instance,
Petitioner decided to reject the advice of his counsel to request
a continuance in order to obtain the transcripts of the pre-trial
depositions to prepare for trial.   Petitioner made his decision
after the court advised him that his counsel was not fully prepared
to go to trial, but it was Petitioner's decision on whether he
would go on with the trial.   Petitioner elected to start the trial,
and because of his insistence, the trial began on that date.   Ex.
D at 8-9.

The state court's adjudication of this claim is supported by
the record.   With respect to this portion of ground one, Petitioner
has failed to advance a persuasive argument that counsel's conduct
in this regard was outside the wide range of professional
representation.   In addition, Petitioner has not shown prejudice
because he has not established that, if counsel had not taken the
actions about which Petitioner complains to protect his speedy
trial rights, there is a reasonable probability that the outcome of
the proceedings would have been different.

In ground one, Petitioner claims he was deprived of his right
to testify due to the ineffective assistance of trial counsel.
This assertion is also raised in ground three of the Petition.   The
trial court rejected Petitioner's claim that his attorney did not
permit him to testify at trial for the reasons set forth in the
State's Response.   Ex. L at 554.   In its response, the state
asserted that the record shows that the Petitioner "knowingly,

- 12 -

voluntarily, and intelligently waived his right to testify during a colloquy between the trial court and himself." <u>Id</u>. at 447.

Indeed, upon review, the record shows that is the case.  At trial, after the state rested, Ms. Papa announced that the defense was not going to call any witnesses.  Ex. D at 180.  The court inquired about Petitioner's decision not to testify.  <u>Id</u>. at 180-81.  The following colloquy transpired, in pertinent part:

> THE COURT: Your lawyer just announced that she's not going to present any evidence in your case which, or course, means that you would not be testifying.  Has she discussed that decision with you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And is it your personal decision that you will not testify in this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand that although you might take advice from your lawyer on that subject only you can decide whether you should testify?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And is this your personal decision and that of no one else?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right.  Thank you.
>
> THE DEFENDANT: Yes, sir.  Thank you, sir.

<u>Id</u>. at 180-81.

Once a defendant testifies in his own behalf at trial, impeachment may occur using convictions of crimes of dishonesty and

felonies.  The record shows that Petitioner had eleven prior felony convictions.  Ex. C at 185.  With the opportunity to impeach under Florida law, if Petitioner had testified at trial, the jury would have heard evidence of his eleven prior felony convictions.  Since Petitioner elected not to testify on his own behalf, the jury did not hear about his prior convictions.

The state, in its response, explained:

> The record conclusively shows that Defendant voluntarily waived his right to [testify at] trial, and as in Cutter, if Defendant had a problem or was concerned with the actions of his counsel regarding his right to testify on his own behalf, Defendant had ample opportunity to do so during his colloquy with the Trial Court Judge.  Additionally, as the Williams court held, the deciding factor is the lack of dialogue between the defendant and the court showing an outright waiver of his right to testify.  In the present case, Defendant waived his right to testify, in open court, after a thorough colloquy. Accordingly, Defendant voluntarily, knowledg[e]ably, and intelligently waived his right to testify, as the record shows that Defendant brought no claims of being threatened or limited by his counsel in his ability to testify.  Thus, this claim is without merit.

Ex. L at 448.

The trial court denied post conviction relief, and the First District Court of Appeal affirmed.  Thus, Petitioner's claim was adjudicated on its merits and the state's court's adjudication of this ground is entitled to AEDPA deference.

With regard to the claim of ineffective assistance of trial counsel, not only did the trial court recognize the appropriate

- 14 -

standard upon which to review the claim raised in grounds one and three, upon due consideration, there was no unreasonable application of clearly established law in the state court's decision to reject the Strickland ineffectiveness claim. Also, the decision to deny these grounds was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts. Finally, Petitioner failed to show deficient performance nor resulting prejudice based on the performance of his defense counsel. Thus, he is not entitled to habeas relief on grounds one and three of the Petition.

In the second ground of the Petition, Petitioner contends that he received the ineffective assistance of counsel because counsel failed to adequately prepare for trial and to object to impermissible hearsay, unrelated collateral crime evidence, fingerprint evidence, and testimony concerning missing pocket change. Petition at 11. He makes a similar claim in the fifth ground of his Petition, claiming his counsel was ineffective for failure to object to testimony about uncharged collateral crimes, including testimony about his fleeing from the police and an alleged missing bicycle. Id. at 20-22.

With regard to Petitioner's claim that his counsel failed to adequately prepare for trial, the trial court rejected this ground. The court said: "[f]urthermore, Defendant claims that, but for Counsel's being unprepared for trial, he would have been acquitted. This Court denied Defendant's claim under the reasoning set for the

- 15 -

in the State's Response to ground ten." Ex. L at 557 (citation
omitted). With respect to the remaining portion of the second
ground of the Petition and also the fifth ground of the Petition,
the trial court rejected Petitioner's claim that he received the
ineffective assistance of counsel in preparing for trial and for
responding adequately to the state's presentation of evidence
during the course of the trial:

> In grounds seven and eight, Defendant
> claims that, but for Counsel's failure to file
> a motion *in limine* for, and to later object
> to, evidence of collateral crime evidence and
> inadmissible witness testimony, the jury would
> not have heard prejudicial evidence, and
> Defendant would have been acquitted at trial.
> Moreover, Defendant also claim that Counsel
> failed to move for judgment of acquittal.
> **This Court notes that Defendant's claims**
> **are based on his failure to realize that the**
> **probative evidence regarding his eluding**
> **police and missing items were presented to**
> **prove identity and intent for burglary.**
> Furthermore, this Court notes that Counsel
> did, indeed, move for a judgment of acquittal
> for lack of evidence. (Exhibit I at 179-80).
> This Court denies the claims on the merits
> under the reasoning set forth in the State's
> Response in grounds seven, eight, and eleven.

Ex. L at 554 (emphasis added).

As noted by Respondents, the Supreme Court of Florida has
allowed evidence of flight to be used to demonstrate consciousness
of guilt of a recently committed offense. Response at 33. In
Partin v. State, 82 So.3d 31, 38 (Fla. 2011) (per curiam), cert.
denied, 133 S.Ct. 107 (2012), the Florida Supreme Court explained:

To determine the relevancy of such evidence to consciousness of guilt in a particular case, the question is whether the evidence "indicates a nexus between the flight, concealment, or resistance to lawful arrest and the crime(s) for which the defendant is being tried in that specific case." Escobar v. State, 699 So.2d 988, 995 (Fla. 1997), abrogated on other grounds by Connor v. State, 803 So.2d 598 (Fla. 2001) In other words, where there is no evidence that would allow the jury to reasonably infer that the defendant was attempting to avoid prosecution *for the offense on trial*, the evidence is not relevant. See id.

However, even relevant, probative evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." § 90.403, Fla. Stat. (2002). This assessment of relative weight entails consideration of "the need for the evidence, the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, the chain of inference necessary to establish the material fact, and the efficacy of any limiting instruction." Brooks, 918 So.2d at 204.

In this instance, the evidence showed that Petitioner was fleeing the police immediately after the crimes were committed, supporting the contention that the evidence of flight was reasonably due to the crimes. Additionally, the evidence established consciousness of guilt of the crimes and was admissible. "This Court has repeatedly affirmed the admission of evidence of flight and resistance to arrest where the defendant was fleeing prosecution for the charged crime. See, e.g., Thomas v. State, 748 So.2d 970, 982-83 (Fla. 1999); Shellito v. State, 701 So.2d 837, 840-41 (Fla. 1997); Bundy v. State, 471 So.2d 9, 20-21

- 17 -

(Fla. 1985)." Partin, 82 So.3d at 39.  Therefore, Ms. Papa was not ineffective for failure to object to these questions.  Here, evidence of consciousness of guilt and identification were significantly probative and not substantially outweighed by other considerations.  See Fla. Stat. § 90.403.  As such, Petitioner cannot show a reasonable probability of a different result had counsel objected to these questions.

To the extent Petitioner is claiming that his counsel was inadequately prepared because she was unable to obtain transcripts of the depositions prior to trial, counsel is not ineffective for any lack of preparation as a result of Petitioner's decision to immediately proceed to trial.  The court warned Petitioner that if he insisted on going to trial and not waiving speedy trial, his counsel would have to go to trial without being fully prepared. Any lack in preparation was not the fault of counsel.  Indeed, Ms. Papa took steps to be more fully informed as she "was given a run-down by Ms. Love [her co-counsel] as to what Mr. Collier said."[2] Ex. D at 7.

Upon review, the trial court recognized the standard for ineffectiveness as set forth in Strickland by referencing the seminal case and summarizing the applicable standard.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that the standard is reasonably

---

[2] Jennifer Love, an Assistant Public Defender, attended the deposition for the defense.  Ex. D at 7.

effective counsel, not the perfect assistance of counsel.  This Court's inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided.  Petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that the results of the proceeding would have been different but for the actions and/or omissions of counsel.

Petitioner is not entitled to relief on grounds two and five of the Petition, the claim of ineffective assistance of trial counsel.  The state court's ruling is supported by controlling case law, Strickland and its progeny.  Deference, under AEDPA, should be given to the state court's holding.  Petitioner raised the issues in his post conviction motion, the trial court denied the motion, and the appellate court affirmed.  This Court concludes that the adjudication of this claim of ineffective assistance of

counsel is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

In the fourth ground of the Petition, Petitioner alleges that his counsel was ineffective for failing to investigate and become familiar with the physical property. This claim was raised in his Amended Motion and rejected by the trial court. Petitioner contends that had his counsel investigated the structure, she would have discovered that the garage was a detached garage and did not meet the definition of an occupied dwelling. The record shows otherwise. The state presented a photograph of the three-car garage on the front of the house. Ex. D at 35. Michael Kelly, Sr., testified that there is a door in the garage which leads into the kitchen of the house. Id. As noted by the trial court, Petitioner's assertion is "refuted by the record[.]" Ex. L at 552. The First District Court of Appeal affirmed the holding of the trial court.

Also in this ground, Petitioner contends that the building/dwelling was unoccupied, and his counsel was ineffective for failure to attempt to refute the charge that it was an occupied dwelling. Upon review, the record shows that counsel's performance was not deficient in this regard. Michael Kelly, Sr., testified that his son went out into the garage to retrieve something out of his car and came back into the house and told his father that there was a man in the garage. Ex. D at 37. Michael Kelly, Jr., testified that he found the Petitioner inside the garage rummaging

through the stuff in his car.  Id. at 56-57.  Not only did the trial court find Petitioner's claim refuted by the record, it also concluded that "trial counsel cannot be ineffective for failing to raise a nonmeritorious issue." Ex. L. at 553.  The First District Court of Appeal affirmed the decision of the trial court.

The state court's ruling is supported by controlling case law, Strickland and its progeny.  Deference, under AEDPA, should be given to the state court's holding.  Petitioner raised the issue that counsel was ineffective for failing to investigate and become familiar with the physical structure in his post conviction motion, the trial court denied the motion, and the appellate court affirmed.  This Court concludes that the adjudication of this claim of ineffective assistance of counsel is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on ground four of the Petition.

In ground six of the Petition, Petitioner claims his counsel provided ineffective assistance because she failed to object to impermissible hearsay testimony, allowing Petitioner's confrontation rights to be violated.  Petition at 23-26.  In this ground, Petitioner complains that his counsel was ineffective for failing to object to the questions addressed to Michael Kelly, Jr., particularly when he was asked about the ownership of the bicycle, and he responded that it was his mother's bicycle.  Petitioner complains that this response amounted to  hearsay testimony, and

- 21 -

defense counsel provided ineffective assistance based on her failure to protect his confrontation rights. In addition, Petitioner claims his counsel was ineffective for failing to object to the questions addressed to Art Collier about the burglary when his testimony revealed that Theresa Collier, his wife, was the individual inside of the house. In essence, Petitioner complains that he was not able to confront Mrs. Collier, because she did not testify at trial, and Art Collier's responses amounted to hearsay testimony.

Upon review of Michael Kelly's testimony, the prosecutor did not elicit any responses including any statements purportedly made by Mrs. Kelly. Michael Kelly simply testified that it was his "mom's" bicycle. Ex. D at 57, 62. The State's Response addresses this ground as follows:

> Defendant argues that Michael Kelly, Jr.'s testimony regarding the ownership of the bicycle as his "Moms" was hearsay and failure to object to this testimony by his counsel rendered his counsel's assistance ineffective. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fla. Stat. Ann. § 90.801(2)(c)(2011). Michael Kelly Jr.'s statements are not hearsay because he was testifying as to who owned the bike, not a statement that his mother had said about the bike.

Ex. L at 459.

Petitioner had the opportunity to confront Michael Kelly, Jr., and cross examine him. The questions posed by the prosecutor did

- 22 -

not call for hearsay responses. Furthermore, the questions were not objectionable. Since the questions and the responses were not impermissible, there was no legal basis for Petitioner's counsel to object. And, had counsel objected, the objections would have been overruled as there was no sound basis upon which to object to the questions.

Upon review of Art Collier's testimony, the prosecutor did not elicit any responses including any statements purportedly made by Mrs. Collier, except with respect to a phone call.[3] Of importance, the prosecutor asked Mr. Collier if anyone was in the house at the time the person was inside of the garage, and Mr. Collier responded in the affirmative that his wife, Theresa Collier, was inside of the house. Ex. D at 80.

In the State's Response, after quoting the pertinent testimony, the state said:

> As the record clearly states, Arthur Collier's testimony was not hearsay because he testified about *his* specific knowledge, that the garage door was open because he knew his wife was home; it was not a statement about what anyone else had said. (emphasis added). Furthermore, the testimony did not unfairly prejudice Defendant because Art Collier testified as to his wife being home first, while the second

---

[3] Mr. Collier testified that the garage door was up when he arrived home because his wife had arrived at the house about a half an hour earlier. Ex. D at 73-74. Mr. Collier mentioned a phone call from his wife, and although counsel could have objected, the information Mr. Collier imparted about what his wife said on the phone was somewhat superfluous and ultimately amounted to cumulative evidence, thus Petitioner was not prejudiced by counsel's failure to object to this testimony.

> part of his statement did nothing to add to
> the testimony that his wife was located in the
> home during the time Defendant burglarized Mr.
> Collier's garage.

Ex. L at 461.

Petitioner had the opportunity to confront Art Collier and cross examine him.  The question posed by the prosecutor as to whether someone was in the house did not call for a hearsay response, and in this instance, the question was not objectionable. There was no legal basis for defense counsel to object to this question as the question and the response were not impermissible. As a result, had counsel objected, the objection would have been overruled as there was no sound basis upon which to object to the question.

Finally, in this ground, Petitioner alleges that the state impermissibly changed the information by making a last minute pen and ink change to the second amended information, inserting the name "Teresa" [sic] Collier for "Art" Collier in count one of the second amended information.  The state addressed this claim in the State's Response, noting that the state may amend the charging document at any time as long as there is no unfair prejudice to the defendant.  Ex. L at 24.

There was no unfair prejudice to Petitioner as his counsel had the opportunity to depose Art Collier prior to trial.  Ex. D at 7. Thus, there was no element of surprise or undue prejudice at trial.

The trial court, in its order denying the Rule 3.850 motion, adopted the reasoning in the State's Response, stating:

> In ground, thirteen, Defendant claims that Counsel's failure to object to hearsay testimony and to the amended Information reasonably undermined the confidence in the outcome of the proceeding. This Court denies Defendant's thirteenth ground under the reasoning set forth in the State's Response to ground thirteen.

Ex. L. at 555-56 (citations omitted).

Petitioner failed to meet his burden in establishing ineffective assistance of trial counsel. Thus, the trial court rejected Petitioner's Sixth Amendment claim of ineffective assistance of counsel. The First District Court of Appeal affirmed the decision of the trial court.

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Not only has Petitioner failed to show deficient performance, he has failed to show that he was prejudiced by counsel's performance. Petitioner is not entitled to relief on ground six of the Petition, the claim of ineffective assistance of trial counsel. The state court's ruling is supported by the record and by controlling case law. Deference, under AEDPA, should be given to the state court's decision. This Court concludes that the state court's adjudication of this claim is not contrary to or an

unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

To the extent Petitioner has raised and exhausted a Confrontation Clause claim asserting his right to confront and cross examine witnesses was so severely curtailed that it amounted to a Sixth Amendment violation, he is not entitled to habeas relief.[4]  The Confrontation Clause "bars the admission of 'testimonial' hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination." <u>United States v. Berkman</u>, 433 F. App'x 859, 863 (11th Cir. 2011) (per curiam) (citing <u>Crawford v. Washington</u>, 541 U.S. 859, 863 (2004)). In this instance, the state court found that the testimony of Michael Kelly, Jr., and Art Collier did not amount to testimonial hearsay.  Therefore, since the statements made at trial did not fall within the definition of testimonial statements of non-

---

[4] The Eleventh Circuit succinctly stated the confrontation right secured by the Sixth Amendment:

> The Sixth Amendment states, in relevant part: "In all criminal prosecutions, the accused shall have the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. This is known as the Confrontation Clause and is made applicable to the States through the Fourteenth Amendment's Due Process Clause. <u>Pointer v. State</u>, 380 U.S. 400, 403-06, 85 S.Ct. 1065, 1068-69, 13 L.Ed.2d 923 (1965).

<u>Kormondy v. Sec'y, Fla. Dep't of Corr.</u>, 688 F.3d 1244, 1269 n.26 (11th Cir.), <u>cert</u>. <u>denied</u>. 133 S.Ct. 764 (2012).

testifying witnesses, there is no Confrontation Clause violation.
Thus, Petitioner is not entitled to habeas relief.

In ground seven of the Petition, Petitioner raises a Sixth
Amendment claim of ineffective assistance of counsel for failure to
object to an in-court identification based on an illegal show-up
identification.   Petition at 27-31.   In this ground, Petitioner
complains that the illegal show-up identification impermissibly
tainted the in-court identification.   Id. at 29.   The trial court
rejected this ground in its order denying the Amended Motion.   The
court adopted the reasoning of the state and held:

> In ground eleven, Defendant claims that,
> but for Counsel's failure to object to an
> illegal "show-up" identification and witness
> testimony [and] failure to file a motion to
> suppress evidence obtained from the illegal
> show-up, Defendant would have been discharged.
> This Court denies Defendant's eleventh ground
> under the reasoning set forth in the State's
> Response to ground eleven.

Ex. L at 555 (citation omitted).

In this ground, Petitioner complains of an unnecessarily
suggestive show-up procedure.   He states:

> No emergency or exigent circumstances
> necessitated the illegal show-up.   There did
> not, under the totality or the circumstances,
> exist a substantial likelihood of
> identification, where the only witness was a
> child under the definition of law; no physical
> contact occurred; there was no conversation
> between parties; a vehicle obfuscated the
> witness' view; and the opportunity to view the
> suspect was insufficient in its length,
> duration and interaction, which precluded any
> accurate description other than race and even
> then only in a vague manner.   An impermissibly

- 27 -

> suggestive   lineup   is   harmful   where
> identification is tainted.

Petition at 28-29.

At trial, Officer Greg Bryant testified that the description provided by Michael Kelly, Jr., matched the person apprehended by other officers. Ex. D at 162-63. Officer Bryant asked Michael Kelly, Jr., if he thought he could identify the suspect if he were to see him again, and Michael Kelly said that he thought that he could make an identification. Id. at 163. Officer Bryant notified his sergeant that he wanted to conduct a show-up. Id.

Officer Bryant directed the officers to prepare for the their arrival by taking Petitioner out of the police car, removing his handcuffs, and having him stand outside of the vehicle so he would not be perceived as a suspect or someone in custody. Id. at 164. Officer Bryant had the lights off in his vehicle so that the witness in the back seat of the police car could not be seen. Id. at 165. Headlights and other lights were shining on the officers and Petitioner. Id. Officer Bryant asked Petitioner if he saw anybody in the area, and Michael Kelly responded that Petitioner was the man that was in his garage. Id. Petitioner's counsel made a hearsay objection, which was sustained. Id. The prosecutor then asked Officer Bryant whether the person Mr. Kelly pointed to during the show-up was in the courtroom, and Officer Bryant responded affirmatively and identified Petitioner. Id. at 166.

On cross examination, defense counsel inquired about the nature of the show-up compared to a line-up. Id. at 167. Officer Bryant explained that during the show-up there were lots of people standing around, including officers, neighbors, and other people. Id. He explained that the officers were standing adjacent to Petitioner and not holding him. Id. at 168.

Michael Kelly, Jr., identified Petitioner as the perpetrator of the burglary in the courtroom. Id. at 57-58. Mr. Kelly testified that he was in the back seat of the police car when the police put on their bright lights, and he saw two policemen holding the man he had seen earlier, and he recognized his face and his clothes. Id. at 64. He said "it was the same face I had seen like right in my garage." Id. Again, Mr. Kelly identified Petitioner as being the man in his garage. Id. at 65.

Petitioner contends that the out-of-court identification was obtained through unnecessary procedures which were impermissibly suggestive and which created a substantial likelihood of mistaken identification. He also contends that the courtroom identification is the result of the impermissibly suggestive identification procedure and is tainted.

The trial court adopted the reasoning provided in the State's Response in denying this ground. The state responded that a police show-up "always has a degree of suggestibility" because there is only one suspect for identification, which could possibly lead to misidentification. Ex. L at 456. This, however, does not mean

- 29 -

that the identification must automatically be suppressed.  Instead,
the court is to look at the totality of circumstances to determine
if there is a substantial likelihood of misidentification.  <u>Id</u>.
(citation omitted).  The state referred to a five-prong test that
must be employed to make such a determination.  With regard to the
law, the state relied upon <u>Adderly v. State</u>, 44 So.3d 167, 170
(Fla. 4th DCA 2010), to identify the five-prong test.  Ex. L at
456.  The five factors are those set forth in <u>Neil v. Biggers</u>, 409
U.S. 188 (1972), and the test provided therein.[5]

The state then proceeded to distinguish cases that were found
to have impermissible show-up identifications.  Ex. L at 456-57.
These impermissible incidents included the police providing the
witness additional information prior to his arrival at the show-up
or obtaining an identification from a witness who did not have the
opportunity to observe the suspect's face during the commission of
the crime.  <u>Id</u>.  Examples of permissible show-up identifications
included those in which the witness clearly saw the perpetrator
during the crime and positively identified that person during the
show-up procedure.  <u>Id</u>. at 457.

---

[5] The factors to be considered in determining whether the
identification was reliable are outlined in <u>Neil v. Biggers</u>, 409
U.S. 188, 199 (1972).  They are:  "the opportunity of the witness
to view the suspect at the time of the crime, the witness' degree
of attention, the accuracy of his prior description of the suspect,
the level of certainty of the identification, and the time between
the crime and the identification."  <u>United States v. Beale</u>, 921
F.2d 1412, 1433 (11th Cir. 1991) (citing <u>Neil v. Biggers</u>, 409 U.S.
188, 1999 (1972)), <u>cert</u>. <u>denied</u>, 502 U.S. 829 (1991).

In this instance, Michael Kelly, Jr., had an "up-close
encounter" with Petitioner in his garage; Mr. Kelly saw
Petitioner's face and his clothes; and Mr. Kelly positively
identified Petitioner during the show-up procedure.  Id. at 458.
"Hence, the Defendant's allegations are without merit and failure
of his defense counsel to object to the show-up procedure does not
merit [a finding of] ineffective assistance of counsel."  Id. at
458-59.  Petitioner has failed to show deficient performance or
prejudice under the requirements of Strickland and his claim of
ineffective assistance of counsel is due to be denied.

To the extent Petitioner raised and exhausted a due process
claim as well as his ineffective assistance of counsel claim, he is
not entitled to habeas corpus relief.  "To violate due process, an
identification procedure used by the police must be unnecessarily
suggestive and create a substantial risk of misidentification."
Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987) (per curiam)
(citing Neil v. Biggers, 409 U.S. 188 (1972)).  In this case, the
confrontation (the viewing of the suspect during a show-up) was
almost immediate, and the victim's memory was fresh.  See Blanco v.
Singletary, 943 F.2d 1477, 1509 (11th Cir. 1991) (quoting Johnson
v. Dugger, 817 F.2d at 729)), cert. denied, 504 U.S. 943, 946
(1992).

In Cunningham v. Dist. Attorney's Office for Escambia Co., 592
F.3d 1237, 1257 (11th Cir. 2010) the Eleventh Circuit, addressed
an identification issue after a show-up:

- 31 -

Brown identified Cunningham as her rapist. Although he attempted to undermine the credibility of that identification, testimony established that Brown identified him only about fifteen minutes after the last time she had seen her rapist. Not only that, but Brown also had ample opportunity to view her attacker in broad daylight, when he confronted her with the knife, when she stalled by getting him to sit down and talk to her, when he pulled her toward the woods, when she convinced him to walk with her toward a less secluded area, when he tackled her after she broke loose and ran, when he held her down, when he put on a condom and raped her, and when she tried to avoid further harm by talking to him afterwards. In these circumstances, Brown's eyewitness identification of Cunningham is powerful evidence of his guilt. See Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (setting forth factors, including the witness's opportunity to view the suspect and the time that elapsed between the crime and the identification, for consideration in determining whether a suggestive identification was nevertheless reliable (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972))); see also United States v. Burke, 738 F.2d 1225, 1229 (11th Cir.1984) (holding that a suggestive identification was nonetheless reliable where the witness was in the defendant's "presence long enough for her to closely observe him," "paid attention to [him] because he was one of the few customers in the restaurant," and only "two months elapsed between the first meeting and the confrontation"); O'Brien v. Wainwright, 738 F.2d 1139, 1141-42 (11th Cir.1984) (holding that an impermissibly suggestive photo lineup did not taint a later identification where, "[a]lthough [the victim] only observed the burglar for a matter of seconds, [he] had a closeup view ... of the burglar's face in a well-lighted room" and the time that had elapsed between the crime and the photo lineup was less than one day). And, Brown identified

- 32 -

Cunningham as her rapist a second time at trial.

"A pretrial identification procedure does not violate due process unless it is so unnecessarily suggestive that it is conducive to irreparable mistaken identification." <u>United States v. Bredy</u>, 209 F.3d 1193, 1195 (10th Cir.) (internal quotation marks and citations omitted), <u>cert</u>. <u>denied</u>, 531 U.S. 897 (2000). Here, although the identification procedure admittedly had a degree of suggestibility, it did not create a substantial risk of misidentification because the identification was nonetheless reliable under the five [<u>Neil v. Biggers</u>] factors.

Employing the 2254(d) more deferential standard for federal court review of state court adjudications, Petitioner's seventh ground must fail. The state referenced <u>Strickland</u> and the <u>Neil</u> factors as controlling authority in the State's Response, and the trial court adopted the state's reasoning in its ruling. <u>See</u> Ex. L at 555. The First District Court of Appeal affirmed the trial court's decision. Thus, the state court's adjudication of the claim was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law. Additionally, it did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Thus, Petitioner is not entitled to habeas relief on the basis of his

claim that he was denied the effective assistance of counsel and/or deprived of due process of law.

In his eighth and final ground, Petitioner contends that he received the ineffective assistance of counsel in violation of the Sixth Amendment because his counsel failed to challenge a jury instruction on recently stolen property and the element of theft. Petition at 33-35.  In support of this ground, Petitioner claims that he was never charged with possession of stolen property or theft, and the evidence presented at trial did not show that he possessed stolen property.  Id. at 34.  The trial court recognized that in ground twelve of the Amended Motion, Petitioner claimed that "but for Counsel's failure to object to impermissible jury instructions, the jury would not have been misled." Ex. L at 555. The court denied this ground and relied on the reasoning set forth in the State's Response.  The state, in its response, submitted that the jury instructions were not improper as long as the state satisfies the requirement that it provide evidence that Petitioner entered the dwelling or conveyance with an intent to commit "theft."  Id. at 459.

The trial court also denied ground nine of the Amended Motion asserting that counsel's failure to object to the information, which did not charge the offense of theft, amounted to ineffective assistance of counsel.  Id. at 554-55.  The court adopted the state's reasoning from its response.  The state asserted this was

- 34 -

a non-meritorious issue. <u>Id</u>. at 453-54.  Based on the record, any deficiency in the second amended information was resolved prior to trial when Petitioner's counsel asked that the state be ordered to identify the offense the state was alleging Petitioner intended to commit within the dwellings/conveyance.  Ex. D at 9-10.  The court responded that it would normally grant a motion for statement of particulars, but asked the state if it would provide the requested information.  <u>Id</u>. at 10.  The state responded that the theory is going to be the offense "would have been theft." <u>Id</u>.  The court asked if that would apply to all three counts, and the state responded affirmatively.  <u>Id</u>. at 10-11.

The trial court charged the jury concerning the third element of burglary being "at the time of entering or remaining in the structure Mr. Graham had a fully formed conscious intent to commit the offense of theft in that structure." <u>Id</u>. at 221.  The court also defined the word theft.  <u>Id</u>.  The court went on to instruct the jury:

> Now proof of an unexplained possession by an accused of property recently stolen by means of burglary may justify a conviction of burglary with intent to steal that property if the circumstances of the burglary and of the possession of the stolen property when considered in the light of all the evidence in the case convince you beyond a reasonable doubt that the defendant committed the burglary.

<u>Id</u>. at 222-23.

- 35 -

As to recently stolen property, Officer Steve Srozinski testified that at one point Petitioner was on a bicycle, later identified as a Huffy bicycle. Id. at 108, 119. When Petitioner was apprehended, he had "an abnormal amount of change in his pocket." Id. at 133. Officer Greg Bryant said that the victims were missing a bicycle and money (change). Id. at 173. Mrs. Kelly's bicycle was found in Mr. Collier's driveway.[6] Id. at 74-75, 197-98. Mr. Collier saw a black person run out of his garage. Id. at 75.

For this ground, the trial court adopted the State's Response and denied post conviction relief. The First District Court of Appeal affirmed. Any failure to object to the jury instructions under these circumstances would not amount to deficient performance of counsel, particularly when defense counsel was able to obtain a statement of particulars before the trial started and the evidence submitted at trial showed, at the very least, that Petitioner was in immediate possession of an unusual amount of change. Applying the "highly deferential" scrutiny to Ms. Papa's actions, as required by Strickland, the Court concludes that Petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that the results of the proceeding would

---

[6] Michael Kelly, Jr., testified that Petitioner rode away on his mother's bicycle. Ex. D at 59-60.

have been different had she taken the action Petitioner suggests she should have taken.

Petitioner is not entitled to relief on ground eight of the Petition, the claim of ineffective assistance of trial counsel for failure to object to the jury instructions.  The state court's ruling is well supported by controlling case law.  Deference, under AEDPA, should be given to the state court's holding.  Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed.  This Court concludes that the adjudication of this claim of ineffective assistance of counsel is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[7]  Because this Court

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of August, 2015.

_____

BRIAN J. DAVIS
United States District Judge

sa 7/30
c:
Curtis J. Graham
Counsel of Record

---

jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.